Argued December 13, decided December 20, 1910.

## EX PARTE JERMAN.

[112 Pac. 416.]

HABEAS CORPUS—JURISDICTION OF CIRCUIT AND COUNTY COURTS.

1. The Constitution of Oregon, Article VIII, Section 2, as amended in 1910, provides that the courts, jurisdiction and judicial system, except so far as expressly changed by the amendment, shall remain as at present constituted, until otherwise provided by law, but that the Supreme Court may in its own discretion take original jurisdiction in *habeas corpus* proceedings. Section 5 provides that no person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws, except upon indictment. *Held,* that while original jurisdiction is given to the Supreme Court in *habeas corpus* proceedings, to be exercised in its discretion, the authority of the circuit and county courts in that respect is not taken away or abridged.

HABEAS CORPUS—ORIGINAL JURISDICTION OF SUPREME COURT—NATURE —"DISCRETION."

2. The Constitution of Oregon, Article VIII, Section 2, as amended in 1910, provides that the Supreme Court may in its own discretion take original jurisdiction in *habeas corpus* proceedings.   *Held,* that it was the intent to allow to the court the widest latitude consistent with law and justice in determining whether it will act in any given case, "discretion" not meaning absolute or arbitrary power when vested in an officer and meaning when vested in a court the exercising of the best of the court's judgment upon the occasion that calls for it, and the section does not thrust upon the Supreme Court the burden of hearing and deciding in the first instance every application for *habeas corpus* which might be presented to it, but before taking jurisdiction the court should consider the condition of its business, the hardships of petitioner incident to a denial of the writ, and whether he has any plain, speedy, and adequate remedy in the circuit court, and a remedy by appeal, and where the court's docket is greatly congested, so that if jurisdiction

were taken other criminal cases equally meritorious, some involving the question of life and death, and nearly all involving the present imprisonment of the parties concerned, would have to be postponed, the court will refuse to take jurisdiction of a petition for *habeas corpus* by persons who have appeared in court and pleaded guilty to an offense, craving immediate sentence, on the ground that the clerk in entering the judgment failed to recite therein the crime for which they were sentenced, as expressly required by Section 1444, B. & C. Comp.; they having adequate remedy by application to the court to require the clerk to correct the judgment entry, by appeal to the Supreme Court, and by application for *habeas corpus* in the circuit court.

HABEAS CORPUS—ORIGINAL JURISDICTION.

3. Regardless of the rights of a petitioner to apply to the lower court for a writ of *habeas corpus*, appellate courts refuse original jurisdiction in such proceedings only where it appears that civil rights are concerned. Per Mr. Justice KING, dissenting.

WORDS AND PHRASES—"DISCRETION."

4. "Discretion" of the court is freedom to act according to the judgment of the court or according to the rules of equity and the nature of circumstances; sound discretion guided by fixed legal principles, to be exercised in conformity with the spirit of the law, and in accordance with the rules established in reference thereto. Per Mr. Justice KING, dissenting.

HABEAS CORPUS—RECORD.

5. The question as to whether a writ of *habeas corpus* should issue must be determined from the record presented. Per Mr. Justice KING, dissenting.

HABEAS CORPUS—RECORD.

6. In *habeas corpus* proceedings in the Supreme Court it cannot be presumed that proceedings in the lower court, upon which a judgment void upon its face was entered, were regular, and that an error occurred through the inadvertence or misprision of the clerk in entering the judgment. Per Mr. Justice KING, dissenting.

HABEAS CORPUS—ORIGINAL JURISDICTION OF SUPREME COURT—CONSTRUCTION OF CONSTITUTION.

7. The Constitution of Oregon, Article VIII, Section 2, as amended in 1910, provides that the Supreme Court may, in its own discretion, take original jurisdiction, in *habeas corpus* proceedings. *Held,* that the amendment was intended to reach the cases of persons unlawfully held in custody, so as to avoid the delays incident to an appeal from the county and circuit courts to the Supreme Court, and the provision making it discretionary with the Supreme Court whether they should take jurisdiction was intended to be exercised in cases more civil than criminal in nature, such as controversies between divorced parents over the custody of children, and instances requiring possibly an examination of witnesses, and not to cases where the record shows a restraint of petitioner under a void judgment. Per Mr. Justice KING, dissenting.

Statement by MR. JUSTICE MCBRIDE.

This is a petition for a writ of *habeas corpus*. The petition was made at the instance of Archie M. Jerman,

whose connection or relationship to the prisoners and the subject-matter does not appear. After the usual formal allegations, it is alleged that the pretended cause of imprisonment is under color of a void judgment of the circuit court of which the following is a copy, omitting the formal portions of the document:

"State of Oregon *v.* Francesco Roberto and Lorus Martinez. On this day the State of Oregon appearing by W. C. Winslow, deputy district attorney, and the defendants appearing in person and by their attorney, Wm. P. Lord, Jr., the plea of not guilty heretofore entered by the said defendants is by them changed to a plea of guilty and the said defendants both waiving further time for sentence and requesting the court to at once pass sentence upon them. It is therefore ordered and adjudged that said Francesco Roberto and Lorus Martinez be confined in the penitentiary of the State of Oregon without limitation of time."

Session laws of 1905, p. 318, provide that whenever any person is convicted of any crime, the maximum punishment of which does not exceed 20 years' imprisonment in the penitentiary, the court may, in its discretion, sentence such person to imprisonment without limitation of time; *provided,* that such imprisonment shall not exceed the maximum penalty prescribed for such offense. There are further provisions permitting the Governor to parole such person after he has served the minimum penalty for such offense. Section 1444, B. & C. Comp., is as follows:

"When judgment upon a conviction is given, the clerk must enter the same in the journal, stating briefly the crime for which conviction has been had; such entry may be made at any time during the term as of the day's proceedings upon which the judgment was given."

Section 6, Article VII, of the Constitution of Oregon provides:

"The Supreme Court shall have jurisdiction only to revise the final decisions of the circuit courts."

Section 9, Article VII, provides:

"All judicial power, authority, and jurisdiction not vested by this constitution, or by laws consistent therewith, exclusively in some other court, shall belong to the circuit courts."

On November 8, 1910, Article VIII of the Constitution was amended so as to read as follows:

"Section 1. The judicial power of the State shall be vested in one Supreme Court and in such other courts as may from time to time be created by law. The judges of the Supreme and other courts shall be elected by the legal voters of the State or of their respective districts for a term of six years, and shall receive such compensation as may be provided by law, which compensation shall not be diminished during the term for which they are elected.

"Sec. 2. The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the Supreme Court may, in its own discretion, take original jurisdiction in mandamus, *quo warranto* and *habeas corpus* proceedings."

In section 5 of such amendment appears the following:

"No person shall be charged in any circuit court with the commission of any crime or misdemeanor defined or made punishable by any of the laws of this State, except upon indictment found by a grand jury."

DENIED.

*Mr. William P. Lord, Jr.,* for the petitioner.

*Mr. Andrew M. Crawford,* Attorney General, and *Mr. Walter C. Winslow,* Deputy District Attorney, for the State.

MR. JUSTICE MCBRIDE delivered the opinion of the court.

1. This is the first application for the exercise of the original jurisdiction of this court conferred by the constitutional amendment, adopted at the last general election. Counsel for petitioners in the able brief filed by

him has, with a fairness as commendable as it is rare, cited the leading authorities both for and against the position contended for by him.

Under the provisions of the original constitution cited in the statement of the case, we think there can be little question that this court had no power to issue the writ; that power being vested exclusively in the circuit and county courts. It is also apparent that, since the amendment, while such power may be exercised by this court in its discretion, the authority of the circuit and county courts in that respect is in no manner taken away or abridged. Until future legislation shall change them, the circuit and county courts continue to exist and to exercise the same powers and jurisdiction in respect to writs of this character which they exercised before the adoption of the amendment. Section 2, above quoted, is clear and distinct on this point, while Section 5 distinctly recognizes the continued existence and authority of the circuit court by providing that "no person shall be charged in any circuit court with the commission of any crime, except by indictment."

Such being the condition, we are now called upon to determine whether the discretion given us by the late amendment should be exercised in this case. It is evident from the nature of the language used, "the supreme court may, in its own discretion, take jurisdiction," that it was the intention of the framers of this amendment to allow to this court the widest latitude consistent with law and justice in determining whether it would act in any given case. It does not, in terms, invest the court with positive jurisdiction. It permits them to take it, and invests the court with a peculiar discretion to do so or refrain from so doing. It does not stop with the usual formula, "in their discretion," but goes further and is more emphatic, using the term "in their own discretion."

2. "Discretion" is defined as the discernment of what is right and proper, "as deliberate judgment." *Citizens' St. R. Co.* v. *Heath,* 29 Ind. App. 395 (62 N. E. 107). "Discretion does mean and can mean nothing else but exercising the best of the court's judgment upon the occasion that calls for it." *Tompkins* v. *Sands,* 8 Wend. (N. Y.) 462 (24 Am. Dec. 46). "Discretion, when vested in an officer, does not mean absolute or arbitrary power. The discretion must be exercised in a reasonable manner, and not maliciously, wantonly, and arbitrarily, to the wrong or injury of another." *Nicklaus* v. *Goodspeed,* 56 Or. 184 (108 Pac. 135.) See, also, "Adjudged Words and Phrases," title "Discretion."

We are of the opinion that it was not the intention of the framers of the late amendment to thrust upon this court the burden of hearing, considering, and deciding in the first instance every application for *quo warranto, mandamus,* and *habeas corpus* which should be presented to it. Such a construction would overwhelm us with a mass of original business, including the examination of witnesses, hearing arguments of counsel, and considering the merits of the causes presented, which would interfere seriously with those duties for which this court was primarily constituted, namely, the hearing and decision of cases coming here in the usual manner upon appeal. And we are also of the opinion that, before taking jurisdiction in any of the cases enumerated, we should carefully consider, first, the condition of the business of this court; second, the hardships to the petitioner incident to a denial of the writ; third, whether the petitioner has any plain, speedy, adequate remedy in the circuit court; and, fourth, whether he has a remedy by appeal.

As to the first, it is well known that, at the present time, the docket of this court is greatly congested, and it follows that, if we take jurisdiction of this matter

and proceed with a hearing, other criminal cases equally meritorious, some involving the question of life and death, and nearly all involving the present imprisonment of the parties concerned, will have to be postponed to the consideration of the case of these petitioners who are confessedly guilty of some crime, the particulars of which do not appear.

It does appear from the imperfect record that they appeared in court, pleaded guilty to an offense against the laws of this State, and craved the immediate sentence of the court therefor, and that thereupon the court sentenced them to an indeterminate term in the penitentiary. So far the proceedings seem to have been regular, but the law makes it the duty of the clerk to enter in the judgment the crime for which the defendant was sentenced, and this he has failed to do, so that Roberto and Martinez are in danger of remaining indefinitely in the bastile, unless this inadvertence is corrected. But these gentlemen have several plain, speedy, and adequate remedies. An obvious one is to apply to the court to require the clerk to correct the judgment entry to correspond with the facts. Another is to appeal to this court in the regular way and have the judgment of the circuit court reversed or amended. And a third is to apply for a writ of *habeas corpus* before a judge of the circuit court, and find their redress. With all these remedies in other courts open to them, we do not think this is a case wherein this court should exercise the extraordinary jurisdiction conferred by the recent amendment to the detriment of other and more meritorious business.

The petition is denied.                    DENIED.

MR. JUSTICE EAKIN delivered the following concurring opinion.

It is urged by the petitioners that the writ of *habeas corpus* is appellate in its operation, and therefore should

be issued as a matter of right. They rely largely upon the cases of *Ex parte Clarke,* 100 U. S. 399 (25 L. Ed. 715), and *Ware* v. *Sanders* (Iowa) 124 N. W. 1081. In both of these cases it is recognized as a proceeding, when issued by the supreme court, by which the judgment of the lower court may be reviewed, in so far as to ascertain whether the court had jurisdiction or its judgment was void for any other reason. But, by the Constitution of the United States, the Supreme Court can only exercise original jurisdiction in cases affecting ambassadors, public ministers, and consuls, and those in which a state is a party. Otherwise its jurisdiction is appellate and it disclaims any original jurisdiction to issue writs of *habeas corpus.* It recognizes the writ as a means by which it may exercise its appellate jurisdiction to review the judgments of the inferior federal courts, to determine whether they were rendered without jurisdiction, or are otherwise void; and usually, in connection therewith, it will issue a writ of *certiorari* to bring up the record, that it may examine it upon these questions, holding that the Constitution does not prescribe the manner in which its appellate jurisdiction may be exercised: *Ex parte Virginia,* 100 U. S. 339 (25 L. Ed. 676) ; *Ex parte Siebold,* 100 U. S. 371 (25 L. Ed. 717). In *Ex parte Yerger,* 8 Wall. 85 (19 L. Ed. 332), the court say:

"We regard as established upon principal and authority, that the appellate jurisdiction by *habeas corpus* extends to all cases of commitment by the judicial authority of the United States, not within any exception made by Congress."

In *Ex parte Siebold,* 100 U. S. 371 (25 L. Ed. 717), it is held that it cannot issue the writ as an exercise of its original jurisdiction. In *Ware* v. *Sanders,* (Iowa) 124 N. W. 1081, the decision follows these cases because the Iowa constitution gives the supreme court supervisory control of inferior judicial tribunals throughout the state,

and jurisdiction to issue the writ of *habeas corpus,* its issuance, being also provided for by statute, may doubtless be properly used as a means of exercising such supervision. The Oregon Constitution contains no such provision, but extends to the Supreme Court only original jurisdiction to issue the writ of *habeas corpus* in its own discretion. An appeal is in the nature of a writ of error which, in most cases, is a matter of right at common law, but with us it depends wholly upon statute granting the right and not upon any principle of the common law. The right is not guaranteed by the Constitution. It provides that this court shall have jurisdiction to revise the final decisions of circuit courts. But this provision is not self-executing and does not give the right, in the absence of legislative enactment, and therefore appeals can only be prosecuted in the manner provided by law: *Portland* v. *Gaston,* 38 Or. 533 (63 Pac. 1051). This writ is not one by which the judgment of the lower court may be reviewed in the Supreme Court.

The language of this provision of the Constitution clearly indicates that it was not the purpose to place upon the Supreme Court the duty to issue and hear as an original proceeding every writ of *mandamus, quo warranto,* and *habeas corpus,* when applied for throughout the state. It "may, in its own discretion," issue the writ; that is, when, in the opinion of the Supreme Court, there is some necessity for an application to it, and only when there is some reason why adequate and prompt relief may not be obtained in the circuit or county court. To hold otherwise, this court might be burdened with these applications of which, until now, the circuit and county courts have had exclusive jurisdiction, and where under all ordinary circumstances the remedy is complete and prompt. There may often be cases in which it will be necessary or proper that this court shall take original

jurisdiction of these writs, but the Constitution contemplates that they shall issue only in cases in which the court deems it proper in the exercise of a legal discretion.

In the case of *Ex parte Ryan,* 124 La. 286 (50 South. 161), upon an application to the Supreme Court for a writ of *habeas corpus,* it is held that the application would not be entertained if the hearing could be had before a court of first instance. In *State ex rel.* v. *Sheriff,* 44 La. Ann. 1014 (11 .South. 541), it is said:

"Whilst the writ of *habeas corpus* is one of right, it is not one of course. A party seeking to avail himself of it is not at liberty to select for himself, absolutely, either the time or place for relief or the tribunals through which it is to be obtained. So far from conceding it to be the duty of this court to entertain and act under each and every application for the writ on which we might legally do so, we are of the opinion that we should abstain from action where this may as well be done in competent lower courts, unless there should be special circumstances in the case making immediate direct action or intervention necessary or expedient."

*State ex rel.* v. *Sheriff,* 36 La. Ann. 855; *State* v. *McColley,* 115 La. 406 (39 South. 81). In *Commonwealth* v. *Baroux,* 36 Pa. 262, an application for a writ of mandamus (included with *habeas corpus* in the grant of jurisdiction), it is held that although the Supreme Court has jurisdiction to issue the writ of mandamus, "it is in our discretion to refuse it as an original case, if there be an adequate remedy in another form or before another court." And the writ was denied because no necessity for making the application to the Supreme Court was shown. In *State ex rel.* v. *Barret,* 25 Mont. 112, 117 (63 Pac. 1030), upon a similar application, it is held that there must be some good reason why the application is made to the Supreme Court for such a writ.

"District courts are ordinarily the primary forums, and in them should be commenced special proceedings, unless sufficient reasons exist why resort to the Supreme Court is necessary in the first instance."

To the same effect are *State ex rel.* v. *Lawrence,* 38 Mo. 535, and *State ex rel. McIlhany* v. *Stewart,* 32 Mo. 379.

The conclusion is irresistible, that the new jurisdictional provision contemplates that the application to the Supreme Court for any of these writs should only be entertained in case there is some good reason why it cannot be issued and heard by the circuit or county court, which does not appear in this case.

MR. JUSTICE KING delivered the following dissenting opinion.

3. As to whether under our Constitution a *habeas corpus* proceeding is appellate in its nature, entitling petitioner to a writ, regardless of the amendment under consideration, and as to the effect of the judicial amendment upon other courts of the state, I express no opinion. But I must dissent from the conclusion announced by my associates concerning our duty, under the amendment, to take jurisdiction of the case before us. It is rarely, if at all, that an argument is heard before issuing the writ, and, as I understand it, because of the far-reaching and possibly disastrous effect of a misstep, or of the establishment of a wrong precedent at this time, counsel for both sides of the controversy were permitted to be heard, and I think properly, for it is certainly of vast importance that no error in this respect should be made. As observed by Mr. Justice LYONS of the supreme court of Wisconsin, *in re Ida Louise Pierce,* 44 Wis. 418:

"The interest of the state in the personal liberty of its citizens is primary and proximate, and to secure such liberty to each citizen entitled thereto is one of the most important purposes of government."

And *in re Semler,* 41 Wis. 522, Mr. Justice COLE remarked:

"No rule should be adopted restricting the jurisdiction of this court over the writ of *habeas corpus,* which has ever been regarded as the safe-guard of personal liberty, except for the most weighty considerations."

So, too, in *Simmons* v. *Georgia I. & C. Co.,* 117 Ga. 305, 308 (43 S. E. 780, 781: 61 L. R. A. 739), Mr. Justice COBB, speaking for the court, observes:

"The writ is as much a palladium of liberty today as it was during the abuses existing in the days of the ancient English sovereigns. It is to the credit of an advanced civilization that the necessity for the issuance of the writ rarely ever arises, but the constitution of this state declares that the privilege of the writ shall never be suspended, and it stands today, as it did in the days of King Charles, to protect and safeguard the liberty of the citizen."

There is perhaps no other state with a constitution containing a provision similar in language to the one presented. Most, if not all, of the states have provisions in their fundamental laws substantially as appears in our Bill of Rights, § 23, viz.:

"The privilege of the writ of *habeas corpus* shall not be suspended, unless in case of rebellion or invasion the public safety require it."

Under this and like provisions all the states containing such requirements take original jurisdiction of *habeas corpus* proceedings, and recognize the right to exercise sound discretion in allowing or denying the writ. On page 311 of 117 Ga., page 782 of 43 S. E. (61 L. R. A. 739), in the case of *Simmons* v. *Georgia I. & C. Co.,* the court observes that "while the writ of *habeas corpus* is a 'writ of right,' it did not, either under the common law or the statute of Charles II, issue as a matter of course, but only on probable cause shown." To the same effect

is the language quoted in the concurring opinion from *State ex rel.* v. *Sheriff,* 44 La. Ann. 1014 (11 South. 541), where under the facts there shown jurisdiction was properly denied. Thus writs have often been denied by the exercise of the sound "discretion" by courts in states without such language in their fundamental laws as may appear in the amendment under consideration, disclosing that the provision, "in their own discretion," adds nothing new to the practice. But I have yet to find the first case where the issuance of the writ has been denied by an appellate court to one imprisoned in the penitentiary under a void judgment. I do not question the possibility of there being an occasional decision to that effect, but, if so, it is a rare exception, and on investigation it probably will be found that the refusal was because of some unusual circumstance or showing made, disclosing special and exceptional reasons therefor. I understand the rule supported by the great weight of authority to be that, regardless of the rights of a petitioner to apply to the lower courts for the writ, appellate courts refuse original jurisdiction in *habeas corpus* proceedings only in cases where it appears that civil rights are concerned.

4. Judicial discretion, it is true, cannot be governed by any fixed rule or rules, for so to do would leave no discretion, yet it has in legal parlance a well-understood meaning, which meaning, it is to be presumed, was intended when placed in our Constitution. The use of the word "own," to which some weight appears to be attached, is tautological, and adds nothing to the strength of the expression. Volume 14 of the Cyc. 383, 384, defines discretion of the court as the "ability to discern by the right line of law, and not by the crooked cord of private opinion, which the vulgar call discretion; freedom to act according to the judgment of the court, or according to the rules of equity and the nature of circumstances;

judicial discretion regulated according to known rules of law; legal discretion, and not a personal discretion; sound discretion guided by fixed legal principles; sound discretion guided by law; sound judgment to be exercised according to the rules of law; sound judicial discretion." This court, in referring to the use of the word "discretion," as used in *Coos Bay Nav. Co.* v. *Endicott,* 34 Or. 573, 576 (57 Pac. 61, 62), and so often used in our statute, has said that it "must be exercised in conformity with the spirit of the law and in accordance with the rules established in reference thereto. * *" Also in *Linn Co.* v. *Morris,* 40 Or. 415, 420 (67 Pac. 295, 297), Mr. Justice Moore observes:

"The judicial discretion that is not subject to review on appeal is such an exercise of authority in the mode of proceeding for the enforcement of rights or the redress of wrongs as is reasonably designed, according to fixed legal principles, to promote substantial justice."

Numerous cases have been reversed by this court on account of an exercise, under some provision of our statutes, of what the trial courts deemed their discretion, among which is *Nicklaus* v. *Goodspeed,* 56 Or. 184 (108 Pac. 135).

5. The question, then, with which we are confronted, and the only question, is whether, under the well-known rules of law, the facts presented by the petition for the writ are adequate to justify the exercise of our discretion in favor of granting the same. The only provision upon the subject reads:

"Whenever any person is convicted of a felony for which the maximum punishment does not exceed twenty years imprisonment, the court may, in its discretion, sentence such person to imprisonment in the penitentiary without limitation of time, and such person so convicted and sentenced may be paroled for good conduct by the Governor upon such terms and conditions as may seem to him wise, at any time after such person shall have

served the minimum period of imprisonment provided for by law for such offense, but such imprisonment shall not in any event exceed the maximum term provided by law for the crime of which the prisoner was convicted and sentenced." Laws 1905, p. 318.

It will thus be seen that, under the statute an indeterminate sentence, or sentence "without limitation of time," can be imposed only where it appears that the accused has been convicted of a felony, the penalty for which does not exceed twenty years' incarceration in the penitentiary: *State* v. *Smith,* 56 Or. 21 (107 Pac. 980). There is nothing in the record before us from which the offense to which defendants pleaded guilty may be ascertained. It may have been for a mere misdemeanor, the penalty for which was a light fine or jail sentence. This question can only be determined upon the return to the writ, which is not before us. The journal entry quoted in the petition, showing the sentence imposed, states no fact or facts from which it may be inferred that a plea of guilty was entered to a felony, and certainly if not to a felony the sentence imposed is absolutely void; no law being provided for such sentence under any other circumstances. The question as to whether the writ should issue should be determined from the record presented.

6. This is too well settled to need citation of authority for its support, and no rule of law is better established or more fully settled than that when proceedings of the character under discussion are presented to this court for consideration, it cannot be presumed that the proceedings in the court below (upon which a judgment, void upon its face, was entered) were regular, and that an error occurred through the inadvertence or misprison of the clerk in entering the judgment. Such is the holding in practically all of the federal and state courts, including the adjudications of this court, as observed in

*State* v. *Gilbert*, 55 Or. 596 (112 Pac. 436), in referring
to the transcript there presented for consideration: "To
it alone can we look to ascertain what the action of the
court below was, and upon it determine whether any error
was committed. The duty of the clerk in such matters
is ministerial undoubtedly, and subject to the supervision
and control of the court. But his record is the highest
record of the judicial action of the court. It imports
verity, and, until impeached by the court itself, is con-
clusive of the matters to which it relates" — citing
*Schirmer* v. *People*, 33 Ill. 276. To the same effect,
*State* v. *Cartwright*, 10 Or. 193; *State* v. *Smith*,
56 Or. 21 (107 Pac. 980); *State* v. *McCaffrey*, 26 Or.
570 (38 Pac. 932). This rule, after careful con-
sideration by this court, was followed in *State* v.
*Walton*, 50 Or. 142 (91 Pac. 490: 13 L. R. A. (N. S.)
811). The same principle is announced and upheld in
*Crain* v. *United States*, 162 U. S. 625 (16 Sup. Ct. 952:
40 L. Ed. 1097), since the promulgation of which the
rule thus declared has been recognized in every state in
the union, having no statutes to the contrary, where the
question has arisen, except in Colorado.

7. Taking the record then as presented, it is obvious
that Francesco Roberto and Lorus Martinez, whom the
petitioner represents, are sentenced to the Oregon State
prison until the end of time without authority of law, and
the proceedings by which they are held are void. It may
be that the prisoners pleaded guilty to a crime coming
within the indeterminate sentence act, but unless we
adopt the policy of relying upon mere rumors or hearsay
evidence, and step outside the record presented to ascer-
tain the facts, we have no means of knowing upon what
charge they are imprisoned. Unless, therefore, we are to
turn a deaf ear to the well-established principles of law
applicable to writs of *habeas corpus*, we should, under

the showing by the petition, allow the writ, on the return to which the real status of the prisoners could be determined.

The object of this amendment, in my judgment, was to reach such cases as the one presented, and thereby avoid the delays incident to an appeal from the county and circuit courts to this court. These delays often work to the prejudice of the state, and at other times occasion great injustice to those unlawfully held in custody. For example, in the case of *Isakson* v. *Stevens,* 57 Or. 57 (110 Pac. 393), recently decided, the petitioner, on a charge of felony, was on February 13, 1909, held before a committing magistrate to await the action of the grand jury. A petition for writ of *habeas corpus* was applied for in the circuit court and denied, but, pending an appeal, the accused was admitted to bail. Owing to the congested condition of our calendar the case was not reached and finally was not determined until August 3, 1910. In that case, under the facts disclosed by the records, the accused deserved to be imprisoned in the penitentiary for a term of years, but after more than 17 months had elapsed the matter was through this court, and although decided against the petitioner, he had not even been tried in the court below. Whether he appeared for trial or, through forfeiture of his bail, escaped punishment, is immaterial for the purpose of this illustration, which discloses the facility with which a criminal through delay may escape justice. No more of the court's time would have been consumed had the application for the writ been made here in the first instance than was finally required on appeal. Had the amendment under consideration then been in force, and the application brought here in the first instance, the petition, not showing sufficient grounds for the discharge of the accused, would have been denied without delay, and the prisoner,

after a few days' delay, would, if guilty, have been sentenced, or, if innocent, have secured his liberty. Assume, on the other hand, that a man is suspected of a bailable offense, yet has committed no crime, but through a misapprehension of the law the judge below denies him bail. Should he then be required to ask the same judge, by *habeas corpus*, to discharge him, and on a second denial of justice be compelled to appeal and wait many months for a final determination in the appellate court, and during that time be restrained of his liberty? To ask this is to answer it. As before noted, the prisoners, so far as we know, may have committed the smallest misdemeanor, entitling them only to a few days in jail, yet, by the conclusion reached, they are required to apply for the writ to the court where the error occurred, on refusal of which they must remain in the state prison for a year or more, until the case may here be reached and determined.

Manifestly the amendment had some purpose in view when it gave to the people affected the right to apply to this court for a writ of *habeas corpus,* and this cause, it appears to me, clearly comes within the class of cases thereby contemplated. The argument that it may impose additional burdens upon a long-suffering and overworked court should have no weight. It is not for the courts to say what work should be thrust upon them by the lawmaking department; that is a legislative and not a judicial matter. Like objections were made to the granting of this guaranty of personal liberty before its first royal recognition in the Magna Charta, and especially when, in 1679, the first fully recognized *habeas corpus* act (31 Car. II, c. 2) was adopted. No doubt it was then anticipated that such courts as were then existent would be overworked by applications of those claiming to be unlawfully restrained of liberty, and possibly they were, but,

so far as I can ascertain, this inconvenience has seldom been recognized as an argument against the exercise and recognition of this right. It was on account of delays of courts and the officers thereof (of which appeals in this country furnish frequent illustrations) that birth was given to what the Cyclopedia (Vol. 21, p. 283) refers to as the first effective *habeas corpus* act, the reasons therefor being stated in the preamble of the act thus:

"Whereas great delays have been used by sheriff, gaolers, and other officers, to whose custody any of the king's subjects have been committed for criminal or supposed criminal matters, in making returns of writs of *habeas corpus* to them directed, by standing out an alias and pluries *habeas corpus,* and sometimes more, and by other shifts to avoid their yielding obedience to such writs, contrary to their duty and the known laws of the land, whereby many of the king's subjects have been, and hereafter may be long detained in prison, in such cases where by law they are bailable, to their great charges and vexations, for the prevention whereof, and the more speedy relief of all persons imprisoned for any such criminal or supposed criminal matters; be it enacted.  *  *"

This act, when read in full, will be found very complete as compared to those preceding it, and was enacted to cure the abuse of discretion then so common. The conditions leading up to its enactment, and until the final solution of the problem in England by the adoption of the law on the subject, enacted in the reign of George III, are given (15 Am. Eng. Enc. Law (2 ed.) 129), as follows:

"The judges delayed for two terms to deliver an opinion as to how far such a charge was bailable, and when at length they agreed that it was bailable they annexed a condition of finding sureties for good behaviour, which still protracted the imprisonment, the Chief Justice SIR NICHOLAS HYDE, at the same time declaring that 'if they were again remanded for that cause, perhaps the court would not afterwards grant an *habeas corpus,* being

already made acquainted with the cause of the imprisonment.' There were other abuses which came into frequent practice which in some measure defeated the benefit of the remedy. Thus the party imprisoning was at liberty to delay his obedience to the first writ, and wait until a second and third, called an *alias* and *pluries,* were issued, before he produced the prisoner."

In the light of history, is it not to be presumed that inconveniences and delays analogous to those above, so frequent even under our advanced system of procedure, moved the people of the state in the adoption of a constitutional provision on the subject, and should we not pause long before establishing a precedent, the effect of which is to recognize a continuance of those conditions? From their inception the circuit courts, as well as county courts of this state, have had jurisdiction of these matters, yet it is a well-known fact that such applications have constituted but a very small percentage of their cases, due principally to the fact that one is rarely held in custody under a void judgment. The writ is used only to correct jurisdictional errors, resulting in a wrongful restraint of liberty, from which it must necessarily follow, that, should we take jurisdiction of this class of cases, applications therefor would rarely be made. In nearly every state in the union its use is invoked by appellate courts, and jurisdiction thereof taken in cases analogous to the one under consideration, yet applications therefor have been comparatively few. Then why anticipate a rush of petitions to this court and an overcrowding of our docket from that source of litigation, if recognized? It is reasonable to assume that our people, knowing our state to be unlike others in this respect, in that unusually long delays must be encountered before a writ of *habeas corpus* may be heard in the Supreme Court, deemed it an important step forward, and accordingly intended by amendment to grant to our citizens the same

rights and privileges in this respect as are enjoyed in other states.

The holding to the effect that these prisoners may apply to the trial court for a correction of the record to conform to the facts, is novel as well as new in its application. As before shown, it is not within our province to assume any state of facts not disclosed by the record. Nor can facts be determined without first granting the writ and procuring a return thereto. To invoke this rule is to condemn without a hearing; it is *petitio principii*, an assumption of the very thing to be established, and which the petitioner seeks to have investigated. It also occurs to me that it is an anomalous precedent to hold it to be the duty of one alleging himself to be imprisoned illegally, or without authority of law, first to move to have the record corrected in such manner as will change an unlawful detention into a lawful imprisonment, but such I take to be the effect of the holding, that an "obvious" remedy would be for the prisoners "to apply to the court to require the clerk to correct the judgment entry to correspond with the facts."

Again, there is a broad distinction between conditions justifying the granting of the writ of *habeas corpus* cases and cases appealed from a judgment in the usual trial of one accused of a crime, where only questions of procedure are invoked, and where, as a rule, jurisdictional matters are seldom presented, while in *habeas corpus* proceedings only the jurisdiction of the court is determined, such as, the right to retain the prisoner in custody under a void law or a void judgment. The distinction between these two classes of cases, and the reason why the same rule should not be invoked in one as in the other, I think manifest. As observed by the court in *Simmons* v. *Georgia I. & C. Co.*, 117 Ga. 308 (43 S. E. 780, 781: 61 L. R. A. 739) : "Questions growing out of an alleged

illegal restraint of a person's liberty are always questions of much delicacy and importance. They impose upon the judiciary the duty of instituting a careful and painstaking investigation into the cause of the detention, and, if it be shown to be illegal, the courts should not be too astute in finding technical objections to the manner in which the legality of the restraint is called in question."

Furthermore, no unusual inconvenience could result from the granting of the writ. The court where the sentence was imposed and the prison where the parties are confined are in this city. This, in addition to the showing presented, disclosing a restraint of the prisoners under a void judgment, affords an additional argument in support of the prayer of the petition, the denial of which, in my judgment, is an abuse of discretion. I can conceive of many cases where the discretion of the court would properly be exercised in denying the petition; for example, cases more civil than criminal in character, illustrations of which are controversies between divorced parents over the custody of children, and instances requiring possibly an examination of witnesses, alluded to in the concurring opinion, which class the appellate courts in some states, in the exercise of their discretion, have either remanded to the courts below or dismissed the writ, on account of the insufficiency of the showing made, or of the lack of importance of the cause presented. As a rule these cases are treated as being on the same plane as many of the injunction, mandamus, and *quo warranto* proceedings; but the distinction between them and those of the character here under consideration, with but few exceptions, is fully recognized by the courts and the confusion respecting the points here involved, I believe to be due to a failure to recognize this distinction; accordingly personal liberty is reduced to the same level as property and official rights. I do not question that, in each of the cases relied upon in the opinion of Mr.

Justice EAKIN, the court was justified in declining to take jurisdiction, and it was cases of that class in which it was intended by the amendment that this court should exercise its sound discretion (or "its own discretion", if preferred) and refuse to entertain. Such, for example, was the case of *Ex parte Ryan*, 124 La. 286 (50 South. 161), where the custody of a child was involved, and where it was apparent there was no emergency for prompt action. Also in *Commonwealth* v. *Baroux*, 36 Pa. 262, in which members of a city council were held for contempt of court in not obeying a peremptory writ of mandamus, in reference to which the court held that the facts did not justify a direct application to the Supreme Court. *State ex rel.* v. *Barrett*, 25 Mont. 112 (63 Pac. 1030), was another ordinary case of mandamus, while the case of *State ex rel.* v. *Lawrence*, 38 Mo. 535, was a *quo warranto* proceeding. The distinction between cases of that character and the one under consideration should preclude them from becoming authority for the course adopted in the case at bar. The language quoted from them in the concurring opinion, standing alone, seems in point, but when read in connection with the record alluded to in each case, I think far from applicable to the points here presented.

In conclusion, I deem the result announced by my associates a long stride towards a suspension of the writ of *habeas corpus*; it is a step backward in the progress of the law, and, I think, clearly inconsistent with the reason and spirit of the *habeas corpus* provision of the judicial amendment to our constitution. The writ should issue and the final outcome be determined upon the showing made thereby.