Argued on motion to dismiss March 12, motion denied April 20, argued on the merits May 25, dismissed July 31, rehearing denied October 5, 1920.

## STATE EX REL. *v.* PLUMMER.*

(189 Pac. 405; 191 Pac. 883.)

### ON MOTION TO DISMISS.

Mandamus—Supreme Court will Take Original Jurisdiction of Mandamus Involving Validity of Ordinance of Large City.

1. A petition to compel an inspector of buildings of the City of Portland to issue a permit for the erection of a building, a pro-

———

*On original jurisdiction of court of last resort in *mandamus* case, see notes in 58 L. R. A. 833; 38 L. R. A. (N. S.) 1000.

                                                      REPORTER.

ceeding involving the validity of an ordinance of the city affecting the interests of a great many people, *held* such that the Supreme Court will take original jurisdiction under Article VII, Section 2, of the Constitution.

## ON THE MERITS.

Mandamus—Application to Compel City Officials to Permit the Erection of an Apartment Building Dismissed.

2. On application for *mandamus* to compel city authorities to permit the erection of an apartment building, where it was admitted by applicant's reply to defendant's answer to the alternative writ that there were errors in the plans and specifications which applicants promised to correct, *held*, that applicant's motion, based on the pleadings, to direct the issuance of a peremptory writ, would be denied and the proceeding dismissed.

Original proceedings in *mandamus* in Supreme Court. On motion of defendant to dismiss.

Department 2.

The relators present a petition for a writ of *mandamus*, and allege, in substance, the following facts:

Petitioner George H. Kelly is the owner of the legal title to lots 1, 2, and 3 in block 4, Johnson's Addition to the City of Portland. Prior to December, 1919, petitioner C. V. Everett contracted to purchase the premises and pay Kelly a part of the purchase price in deferred payments, and agreed to begin promptly the construction of a high-grade fireproof apartment house on the premises. Defendant, H. E. Plummer, is the inspector of buildings of the City of Portland intrusted with the supervision of the issuance of building permits by the Bureau of Buildings of the city.

On December 12, 1919, pursuant to application of the petitioner Everett, the defendant issued a permit of the Bureau of Buildings, numbered 80,686, for excavation upon the premises for the improvements hereinafter referred to, and petitioner Everett proceeded to have said premises surveyed and staked for excavation, and incurred obligations to the ex-

tent of $3,700 for the preparation of plans and specifications for the prospective structure.

On January 22, 1920, petitioner Everett, through his architects, made application to the defendant and to the Bureau of Buildings for a permit to erect a six-story fireproof apartment house on the premises at an estimated cost of $225,000, with exterior design as shown on the cut filed as Exhibit "A." The application was accompanied by plans and specifications in manner and form as provided by the Building Code of the City of Portland.

Petitioners further allege the purport of the "Building Code" which is ordinance number 33,911, of the city, which provides for restricting, as to location, buildings erected for the purpose of being used as:

"(1) Hospitals.

"(2) Buildings for the treatment of insane and feebleminded.

"(3) Stables containing over two (2) animals"— and twenty-nine other kinds of buildings.

Section 707 of the ordinance provides that:

"No permit for the erection or alteration of a building for any of the uses given in Section 706 shall be issued unless the application shall be approved by the council. The application for such permit shall be accompanied by a plan giving location of the building in question together with all buildings within a radius of two hundred (200) feet from the building and giving also the names and addresses of the owners of such buildings."

Section 708 ordains that the owners of all buildings within two hundred feet of the building proposed shall be notified of the application and of the time fixed for consideration of the permit and hear-

ing of protests against granting the same by the council and that:

"The granting of the application for permit shall not be approved by the council wherever it appears that the granting of the same is or may be detrimental to the public health or safety or detrimental to the welfare and growth of the city."

On January 14, 1920, an ordinance was passed, amending Section 706 of ordinance number 3311 so as to include in the list of objectionable structures or usages "Apartment Houses, Laundries, Shack Buildings and Telephone Exchanges," and limiting the provisions of the ordinance as to apartment houses so that the same "shall cease to be in force after July 1, 1920," and declaring an emergency.

The inspector of buildings and Bureau of Buildings and city council, upon proper application of said petitioner for such permit, and upon objection thereto by a majority of the owners of the buildings within two hundred feet of petitioners' property, arbitrarily rejected such application, and refused to issue such permit because of the amendment to Section 706 of the ordinance.

Petitioners also aver that the action of the municipal officers in refusing a building permit deprives petitioners of their property rights in violation of Article XIV, Section 1, of the Constitution of the United States, and of Article I, Section 10, of the Constitution of the State of Oregon; that the property, if used for the construction of a residence only, is worth approximately $20,000, whereas if utilized for the construction of an apartment house, it would be worth $40,000; that the proposed apartment house conforms to the structural requirements of the building ordinances of the city; and that the alleged arbi-

trary action of the city officials amounts to an illegal confiscation of petitioners' valid and lawful right to use their property for lawful purposes.

An alternative writ of *mandamus* was issued without compliance with Rule 33 of this court, 89 Or. 723 (173 Pac. xi), which is as follows:

"No writ of *habeas corpus,* or other writ of original jurisdiction will issue from this court when the applicant has a full, speedy, and adequate remedy in the Circuit Court, except by permission of the court, or a justice thereof, on notice to the adverse party.

"All applications for such writs must be served upon the adverse party before being filed, and be accompanied by a typewritten or printed memorandum of the points involved, and the authorities relied upon: *Ex parte Jerman,* 57 Or. 387 (112 Pac. 416)."

MOTION DENIED.

*Mr. Wallace McCamant, Mr. Walter P. La Roche,* City Attorney, and *Mr. H. M. Tomlinson,* Deputy City Attorney, for the motion.

*Messrs. Day, Hampson & Nelson* and *Mr. C. J. Young, contra.*

BEAN, J.—The defendant has filed a motion to dismiss the proceeding as not being a proper one for this court to consider in the exercise of its original jurisdiction. The application for the writ not having been served upon the defendant before being filed in compliance with Rule 33, we will consider the matter as though the alternative writ had not been issued.

The proceeding is brought in reliance upon Article VII, of Section 2, of the Constitution of Oregon, as amended in 1910, which contains the following:

"But the Supreme Court may, in its own discretion, take original jurisdiction in *mandamus, quo warranto* and *habeas corpus* proceedings."

This court speaking through Mr. Justice McBRIDE construed this amendment on the point now under consideration in a *habeas corpus* case, *Ex parte Jerman,* 57 Or. 387, 392 (112 Pac. 416, 418, Ann. Cas. 1913A, 149), using the following language:

"We are of the opinion that it was not the intention of the framers of the late amendment to thrust upon this court the burden of hearing, considering, and deciding in the first instance every application for *quo warranto, mandamus,* and *habeas corpus* which should be presented to it. Such a construction would overwhelm us with a mass of original business, including the examination of witnesses, hearing arguments of counsel, and considering the merits of the causes presented, which would interfere seriously with those duties for which this court was primarily constituted, namely, the hearing and decision of cases coming here in the usual manner upon appeal. And we are also of the opinion that, before taking jurisdiction in any of the cases enumerated, we should carefully consider: First, the condition of the business of this court; second, the hardships to the petitioner incident. to a denial of the writ; third, whether the petitioner has any plain, speedy, adequate remedy in the Circuit Court; and, fourth, whether he has a remedy by appeal."

In 7 R. C. L., page 1076, Section 112, the principle to be applied is stated thus:

"To warrant the assertion of original jurisdiction in an appellate court the interest of the state should be primary and proximate, not indirect or remote; peculiar, perhaps, to some subdivision of the state, but affecting the state at large in some of its prerogatives, raising a contingency requiring the interposition of the appellate court to preserve the

prerogatives and franchises of the state in its sovereign character; the appellate court judging of the contingency, in each case, for itself. For all else, though raising questions *publici juris,* ordinary remedies and ordinary jurisdictions are adequate, and only when, for some peculiar cause, these are inadequate will the original jurisdiction of the appellate court be exercised for the protection of merely private or merely local rights."

In the notes on the question in 20 Ann. Cas. 188, 189, we find the following:

"In states where both the court of last resort and the inferior courts have original jurisdiction to issue writs of *mandamus,* it is the general rule that the court of last resort will exercise its jurisdiction only in cases involving questions *publici juris,* or in cases where it is shown that a refusal to take jurisdiction would practically amount to a denial of justice, and that the writs from that court should, in general, be put only to prerogative uses. * *

"Some courts go even further than the rule stated at the beginning of this section, and say that the writ should not be issued except in cases affecting the sovereignty of the state, its franchises, or prerogatives, or the liberties of its people, or in exceptional cases where a failure to take jurisdiction would amount to a denial of justice."

We will consider this proceeding in accordance with the rule announced in *Ex parte Jerman,* 57 Or. 387, 392 (112 Pac. 416, 418, Ann. Cas. 1913A, 149), in the light of the other precedents cited. The docket of this court is in such condition that, should the relators be relegated to the Circuit Court to obtain a determination of their rights in the matter; it is probable that one year's time would elapse before the case could be heard in this court upon an appeal. It goes without saying that this court would

receive the benefit of the more thorough and orderly presentation of the case on an appeal from a judgment rendered after a trial in the Circuit Court. According to the allegations of the petitioners, the necessary delay that would be occasioned by such a course would prevent their beginning building operations during the present year. Circumstances might be such that on account of financial conditions such a delay would prevent the petitioner Everett from constructing the building for a much longer time, and would practically amount to a denial of justice. The ordinary remedy of the relators, if their allegations are true, would be inadequate.

While the state at large is not interested in this proceeding, the validity of an ordinance of the large City of Portland which affects the interests of a great many people is involved. The importance of the question is shown by the statements in the brief of defendant:

"If, therefore, the application made by this petitioner shall prevail, a decision of far-reaching importance will be handed down.

"*Public* interests and *public* policy are shown by the writ to be in question, and the police power of the City of Portland sought to be abridged."

We think it is conceded that the question involved is one of great importance to the relators and to the municipality. The fact that the business of this court is congested is like a two-edged sword in this case, and is a reason why original jurisdiction should not be exercised except in proper cases, and should also be considered in estimating the time that would expire before a final determination of such a proceeding if this court should refuse to entertain original jurisdiction.

It is not our purpose to consider the merits of the case, or intimate an opinion as to the validity of the ordinance in question, in passing upon the motion.

Counsel for relators have interposed a motion for the issuance of a peremptory writ at this time. Without discussing the matter, we think this should be postponed until a return to the writ has been made.

The motion to dismiss will therefore be denied, and the defendant allowed five days in which to answer the writ.                                  MOTION DENIED.

McBRIDE, C. J., and JOHNS and BENNETT, JJ., concur.

---

Appeal dismissed July 31, rehearing denied October 5, 1920.

ON THE MERITS.

(191 Pac. 883.)

In Banc.

The relators, desiring to build an apartment house on real property in the City of Portland, of which the relator Kelly is the owner and which the relator Everett had contracted to purchase, applied to the defendant, as inspector of buildings of the municipality, for a permit to erect the building. Permission having been refused by the defendant, the relators by an original proceeding in this court, after their appeals hereinafter mentioned had been denied, sued out an alternative writ of *mandamus* requiring the defendant to issue the permit or show cause why he had not done so. After allegations of the ownership of the property, that the defendant is the inspector of buildings, intrusted by the bureau of

buildings of the City of Portland with the supervision and direction of the issuance of building permits, and a further statement that on December 12, 1919, on the application of the relator Everett the defendant had issued a permit of the bureau of buildings for excavation upon the premises for the future erection of the apartment house, it is said:

"That on January 22, 1920, relator Everett, through his architects, made application to the said defendant and to the said bureau of buildings for a permit to erect a six-story fireproof apartment house on said premises at an estimated cost of $225,000; that said application was accompanied by plans and specifications in manner and form as provided by the Building Code of the City of Portland; that the term 'Building Code' is the designation of ordinance number 33911 of the City of Portland, Oregon, entitled, 'an ordinance providing building regulations to be known as the Building Code, repealing certain existing building regulations and providing a penalty, and declaring an emergency,' which said ordinance had theretofore been duly enacted and approved and has been and is in full force and effect in the said city; that said ordinance requires application to be made to the said bureau of buildings for a permit to erect structures, directs the accompanying of the application for permit with two sets of plans and specifications and an estimate of probable cost of the work, and requires the issuance by said bureau of such permit if the applications, plans, and specifications conform to the requirements of the said Code; that the said ordinance further provides that a permit shall either be issued or refused within three working days from the date of filing the application, and a board of appeal is created to which appeal may be made from such refusal on the part of the said building inspector or bureau of buildings."

The writ states also, in substance, that at the time the excavation permit was issued, the Building Code

of the city provided that certain kinds of buildings erected or altered for use in whole or in part for certain kinds of occupancy therein naméd, should be restricted as to location; that no permit for the erection or alteration of such building should be issued unless such application were approved by the council; that it should be accompanied by a plan giving the location of the building in question, together with all buildings within a radius of two hundred feet from the proposed structure, and the names and addresses of the owners of such buildings; that the ordinance required fixing a time for the consideration of the case by the council, notification to the owners of neighboring buildings, and that the "granting of the application for a permit shall not be approved by the council wherever it appears that the granting of the same is or may be detrimental to the public health or safety or detrimental to the welfare and growth of the city." In the list of restricted buildings, as the ordinance stood at the time the excavation permit was issued, apartment houses were not included. The writ narrates that on January 14, 1920, the restrictive ordinance mentioned was amended so as to include, among other structures, apartment houses, and that Section 2 of the amending ordinance limited the period of its application to apartment houses as follows:

"Section 2. That the provisions of Section 706 of said ordinance No. 33,911 so far as the same applies to apartment houses, shall cease to be in force and effect from and after July 1, 1920."

This amended ordinance carried with it an emergency clause.

The writ goes on to allege that when the application was made for the erection of the desired apart-

ment house the defendant did not object to the application, plans, or specifications because of any imperfections therein or because of failure to conform to the Building Code or any ordinance of the city, but based his refusal on the ground that because the building ordinance was amended so as to include apartment houses he was powerless to issue a permit without direction of the city council. It further appears that the relator Everett appealed from the action of the defendant to the board of appeals constituted by the Building Code, where his appeal was denied, and the matter was carried to the city council on his further appeal, accompanied by a plan as prescribed in the building code before the amendment mentioned, with the result that a majority of the owners of neighboring buildings within two hundred feet of the site of the proposed structure objected to the granting of the permit, whereupon the council also rejected the application and declined to issue the permit. This rejection is characterized by the alternative writ as an arbitrary exercise of power assumed by the council to deny the right to erect apartment houses on the location chosen merely because of aesthetic considerations or because certain neighboring owners preferred to be exclusive. The effect of the action of the defendant and of the bureau of buildings, board of appeals, and city council is declared by the relators to be to deprive them of their property rights and to be in violation of Article XIV, Section 1, of the Constitution of the United States, and Article I, Section 10, of the state Constitution; and it is averred that if the property is used merely for the construction of a residence it is worth only $20,000, whereas if used for the con-

struction of an apartment house, it will be worth
$40,000.

The defendant showed cause by answering. On
information and belief he denies the ownership of
the property, and admits that he is the inspector of
buildings and is authorized to issue permits, but not
for the erection of apartment houses. He denies
that the application mentioned in the allegation of
the writ already quoted was accompanied by plans or
specifications in manner or form as provided by the
Building Code of the City of Portland, and denies
that the Code requires the issuance by the bureau of
such a permit if the application, plans and specifica-
tions conform to the requirements of said Code, or
that a permit shall either be issued or refused within
three days or within any other time from the date of
the filing of the application. It is admitted that the
ordinance became *functus officio* on July 1, 1920, as
to apartment houses. The answer denies that the
defendant restricted his objections to the plans and
specifications submitted with the application to mere
want of authority to grant the permission without
consent of the council. The appeal to the board of
appeals and finally to the council is admitted, with
the result as stated in the alternative writ. Other
admissions and denials were made, not necessary to
be noticed here.

Affirmatively, the answer to the writ sets out the
amendment to the ordinance, including apartment
houses on the restricted list, saying that as to such
edifices the ordinance had been amended on Decem-
ber 21, 1919. The answer further points out that
the plans and specifications mentioned in the alterna-
tive writ as having been presented to the defendant,
failed in seventeen specified particulars to comply

with the Building Code, the Housing Code, and other ordinances of the City of Portland, which are pleaded. There are other allegations of the answer giving reasons, based upon the ideas of the defendant respecting health requirements, fire protection, and aesthetic considerations, why the site mentioned ought not to be devoted to the use of an apartment house.

The reply admits many of the defects charged against the submitted plans and specifications by the answer, but avers a willingness on the part of the relators to make proper corrections in the future. At this stage of the litigation the relators moved for a judgment on the pleadings awarding a peremptory writ of *mandamus* against the defendant, commanding him forthwith to issue the desired permit.

DISMISSED.    REHEARING DENIED.

For the relators there was a brief over the names of *Messrs. Dey, Hampson & Nelson* and *Mr. C. J. Young,* with an oral argument by *Mr. Roscoe C. Nelson.*

For defendant there was a brief over the names of *Mr. Wallace McCamant, Mr. H. M. Tomlinson* and *Mr. Walter P. La Roche,* City Attorney, with oral arguments by *Mr. McCamant* and *Mr. Tomlinson.*

BURNETT, J.—2. It is well-nigh axiomatic that the court is powerless to render judgment on the pleadings when there is at issue any question of fact material to the relief sought. It is charged in the writ, as appears more at large in the quoted allegation above set forth, that the application made to the defendant for permission to erect the apartment house was accompanied by plans and specifications

in manner and form as provided by the Building Code of the City of Portland, and this is denied. At this point the relators are confronted with a dilemma. On the one hand there is an issue on this part of the writ, in which there appear an affirmation on one side and a traverse on the other. On the other hand, this cannot be avoided with the statement, as made in the argument, that this allegation was a mere conclusion of law. In brief, there is either an issue of fact joined, or the pleading of the writ is insufficient in point of law, in that it states a mere conclusion of law and not a fact. To allow the motion for a judgment awarding a peremptory writ would be either to disregard the issue of fact, if there be one, or to permit the relators to stultify themselves by admitting that their pleading was insufficient to justify the issuance of a writ.

It is hornbook law that the writ will not issue unless it is made clear that all of the preliminaries preceding the execution of the function sought to be compelled have been completed, so that nothing is left for the defendant to do except the ministerial duty involved. Having availed himself of this extraordinary remedy of *mandamus*, the petitioner for the writ must show such a situation that all objections to the performance of the duty have been removed and that the defendant is confronted with the absolute obligation to perform the act sought to be compelled. In this case the validity and authority of the Building Code of the City of Portland are granted, except so far as it attempts by the amendment to make proposed apartment houses subject to the will of the council. In many of the respects in which the plans and specifications are challenged, the objections thereto are conceded, for instance, the re-

quirement of the dimensions of flues, the width of stairways, and the like, which are sufficient for illustration. In the very nature of things, under the building ordinance, the defendant could not and ought not to be allowed to issue permits for the erection of buildings which do not conform to the Building Code.

It is urged, however, in argument, and substantially alleged, that at the time the defendant rejected the application he did not make any of the objections now set out in his answer respecting nonconformity with the Building Code. It must be remembered, however, that the defendant is a public officer, whose duties are prescribed by the ordinances of the city, of which the relators must take notice. It is not within his authority to ignore or waive any of the requirements of the city laws. The relators must take notice of the limitations upon his authority. Upon them, not upon him, rests the burden of showing all things necessary to creating a situation in which his duty to issue the permit is imperative. They cannot rely upon waiver, as if the obligation were between private individuals, where only their respective rights are affected. In such an instance, where only private rights and duties are involved, either party may waive requirements which he otherwise would be authorized to enforce. It is not so, however, in matters where public rights are involved and the duties of an officer are enjoined upon him by law with restrictions governing his conduct. It is not necessary to cite authorities for the views herein expressed. They are of common learning. These are sufficient reasons for denying the motion asking the issuance of a writ on the pleadings as they now stand. Neither would it be competent to issue a peremptory writ conditioned upon the relators' future correction of

the errors in their plans and specifications. A conditional peremptory writ would be a contradiction of terms. Peremptory means absolute, and admits of no qualification.

For the reason that by the admitted terms of the ordinance it ceased to be effective on the first day of July, 1920, as to apartment houses, the right of the council to pass such an ordinance has become a moot question, which the invariable practice of this court has excluded from our consideration: *Moores v. Moores*, 36 Or. 261 (59 Pac. 327); *State ex rel.* v. *Grand Jury*, 37 Or. 542 (62 Pac. 208); *State ex rel.* v. *Fields*, 53 Or. 453 (101 Pac. 218); *State ex rel.* v. *Webster*, 58 Or. 376 (114 Pac. 932).

Only in its discretion does this court take original jurisdiction in cases of this sort: Article VII, Section 2, State Constitution.

For the reasons already stated, therefore, the motion, based on the pleadings, to direct the issuance of a peremptory writ, will be denied, and as an exercise of our constitutional discretion the proceeding will be dismissed, without prejudice to the rights of the relators to apply to the Circuit Court for a writ of *mandamus* as they may be advised.

DISMISSED. REHEARING DENIED.

McBRIDE, C. J., and HARRIS, J., concur in the result.

BEAN, J., took no part in the consideration of this case.

JOHNS, J.—Under the facts shown to exist, neither one of the reasons assigned for dismissing the writ is legally sound, and for such reason I dissent.